[Cite as *State v. Inkton*, 2026-Ohio-347.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :

                         No. 115045

v.                                      :

DEONDRE INKTON,                         :

    Defendant-Appellant.             :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 5, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-696950-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Alicia Paolucci, Assistant Prosecuting Attorney, *for appellee*.

Susan J. Moran and Michael T. Fisher, *for appellant*.

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Appellant Deondre Inkton ("Inkton") challenges his convictions for sexual battery, money laundering, possession of criminal tools, and multiple counts of trafficking in persons and promoting prostitution. He argues that his guilty pleas were not made knowingly, intelligently, or voluntarily with a full understanding of

the consequences because the trial court did not advise him of the "real, potential maximum penalty" that he was facing.

{¶ 2} After a thorough review of the applicable law and facts, we find that Inkton has failed to demonstrate that his pleas were not knowingly, voluntarily, and intelligently made. We overrule Inkton's assignment of error and affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 3} Inkton faced charges in this matter for trafficking and exploiting 12 women over a period of 10 years. He was indicted on 34 charges, including eight counts of trafficking in persons, felonies of the first degree, in violation of R.C. 2905.32(A)(1); eight counts of compelling prostitution, felonies of the third degree, in violation of R.C. 2907.21(A)(1); 13 counts of promoting prostitution, felonies of the third degree, in violation of R.C. 2907.22(A)(2); one count of strangulation, a felony of the third degree, in violation of R.C. 2903.18(B)(2); one count of rape, a felony of the first degree, in violation of R.C. 2907.02(A)(2); two counts of money laundering, felonies of the third degree, in violation of R.C. 1315.55(A)(1) and (A)(3); and one count of possessing criminal tools, a felony of the fifth degree, in violation of R.C. 2923.24(A). Some of the charges also carried human-trafficking specifications, a sexually-violent-predator specification, and a forfeiture specification.

{¶ 4} At the plea hearing, the State outlined two possibilities of plea agreements, where Inkton would plead to various charges. Defense counsel stated

that Inkton had elected to proceed on the first option "with the [sentencing] range based off the statute with ten to 15 [years], but I know they're going to argue for more." (Tr. 781.)

{¶ 5} During the plea colloquy, the court asked Inkton if anyone had made any promises to him to enter a plea of guilty. He stated, "No promises. Just a minimum of ten to 15 years." (Tr. 787.) The court confirmed that Inkton understood that it was making no promise to him as to what the sentence would be.

{¶ 6} Under the first option, Inkton agreed to plead guilty to an amended indictment, which contained three counts of trafficking in persons; four counts of promoting prostitution, one of which had an accompanying human-trafficking specification; one count of sexual battery; one count of money laundering; and one count of possessing criminal tools. Inkton further agreed to forfeit certain property and that he would be classified as a Tier III sex offender.

{¶ 7} The trial court outlined each count and advised Inkton as to the sentencing range for each charge:

> Count 1 (trafficking in persons – commercial sex acts) — 10 to 15 years, plus the potential additional incarceration time under the Reagan Tokes Law;
>
> Count 10 (promoting prostitution) — six to 18 months;
>
> Count 11 (trafficking in persons – commercial sex acts) — a mandatory term of 10 to 15 years;
>
> Count 15 (sexual battery) — one to five years;
>
> Count 16 (promoting prostitution) — six to 18 months;

Count 21 (promoting prostitution with a human-trafficking specification) — a mandatory term of six to 18 months;

Count 25 (trafficking in persons) — a mandatory term of 10 to 15 years;

Count 31 (promoting prostitution) — six to 18 months;

Count 32 (money laundering) — nine to 36 months; and

Count 34 (possessing criminal tools) — six to 12 months.

{¶ 8} The court asked Inkton if he understood the offenses to which he was pleading guilty and if he understood the possible maximum penalties. He indicated that he did.

{¶ 9} The court further stated:

The minimum sentence that the Court could impose at sentencing is ten to 15 years plus that indefinite tail that we discussed. That is the minimum. Certainly, the penalties go up from there. And I'm anticipating your lawyer will be arguing for a minimum sentence. I'm anticipating the State of Ohio will argue for something higher.

(Tr. 811.) The court again asked Inkton if he understood, and he confirmed that he did. Inkton then entered a plea of guilty to each charge.

{¶ 10} The trial court imposed a sentence of 15 to 22 years on Count 1 (trafficking in persons); 15 years on Count 11 (trafficking in persons); 10 years on Count 25 (trafficking in persons); 18 months each on Counts 10, 16, 21, and 31 (promoting prostitution); five years on Count 15 (sexual battery); 24 months on Count 32 (money laundering); and nine months on Count 34 (possessing criminal tools). All counts were ordered to run concurrently except for Counts 11 and 25

(sexual battery and one of the human-trafficking counts), which were to run consecutively to Count 1 for a total aggregate sentence of 30 to 37 and one-half years.

{¶ 11} Inkton then filed the instant appeal.

## II. Law and Analysis

{¶ 12} In his sole assignment of error, Inkton argues that his guilty pleas were not made knowingly, voluntarily, and intelligently because the trial court did not advise him of the "real, potential maximum penalty" he was facing. Inkton asserts that he believed that he was facing a range of 10 to 15 years and that the court did not discuss the possibility of consecutive sentences.[1] He further contends that it could not be assumed that Inkton, as a layperson, understood that his non-allied offenses allowed the court to sentence him consecutively.

{¶ 13} In considering whether a criminal defendant knowingly, intelligently, and voluntarily entered a guilty plea, we first review the record to determine whether the trial court complied with Crim.R. 11(C). *State v. Davner*, 2017-Ohio-8862, ¶ 41 (8th Dist.), citing *State v. Kelley*, 57 Ohio St.3d 127, 128 (1991). Crim.R. 11(C) sets forth certain constitutional and procedural requirements that a trial court must

---

[1] In his brief, Inkton further states that prior to the plea hearing, his counsel stated on the record that "the judge was lenient . . . something which the judge confirmed. . . ." (Inkton brief p. 6.) The transcript actually reflects that defense counsel stated that he had told Inkton that the trial court judge was "not the harshest sentencer in the building . . ." and asked the judge if that was fair; the court responded that that was "a fair assessment." (Tr. 233-234.) It was not appropriate for defense counsel to pose such a question and as troubling that the judge answered it. A defendant may demonstrate that they deserve leniency at sentencing by showing genuine remorse and sincere acceptance of their actions. The judge's role is to ensure that a plea is entered knowingly, voluntarily, and intelligently, consider all of the sentencing factors, and to follow the applicable law.

comply with prior to accepting a guilty plea. *Id.* Under Crim.R. 11(C)(2), the trial court shall not accept a guilty plea in a felony case without personally addressing the defendant and doing all of the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty . . . and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 14} "[A] trial court properly complies with Crim.R. 11(C) by informing the defendant of the maximum sentences faced *for each of the individual[ly] charged crimes*." (Emphasis added.) *State v. Poage*, 2022-Ohio-467, ¶ 13 (8th Dist.), citing *State v. Johnson*, 40 Ohio St.3d 130, 134 (1988). "A defendant must know the maximum penalty involved before a trial court accepts his or her guilty plea." *State v. Tackett*, 2023-Ohio-2298, ¶ 22 (8th Dist.), citing *State v. Corbin*, 141 Ohio App.3d 381 (8th Dist. 2001), citing *State v. Wilson*, 55 Ohio App.2d 64 (1st Dist. 1978), and *State v. Gibson*, 34 Ohio App.3d 146 (8th Dist. 1986). "[T]he 'maximum penalty' referred to in Crim.R. 11(C)(2)(a) is for the single crime for which the plea is offered." *State v. Smith*, 2025-Ohio-1548, ¶ 18 (8th Dist.), citing *State v. Berry*, 2023-Ohio-

605, ¶ 9 (8th Dist.), citing *Johnson*. As set forth above, the trial court in the instant matter clearly advised Inkton of the maximum potential prison sentence for each individual count.

{¶ 15} "Under Ohio law, there is no requirement for the trial court to advise of the possibility that each individual sentence may be imposed consecutively, such that a plea can be considered as involuntary in the absence of such an advisement." *State v. Cobbledick*, 2020-Ohio-4744, ¶ 6 (8th Dist.). This court has noted a distinction, though, where consecutive sentences were mandatory, as opposed to discretionary under R.C. 2929.14(C). With mandatory consecutive sentences, the court is required to advise the defendant during the plea colloquy in order to substantially comply with Crim.R. 11(C)(2); the same does not hold true for consecutive sentences imposed at the trial court's discretion. *Id*. at ¶ 5-6, citing *State v. Sarkozy,* 2008-Ohio-509, paragraph one of the syllabus; *State v. Bishop*, 2018-Ohio-5132, ¶ 17; *State v. Norman*, 2009-Ohio-4044, ¶ 7 (8th Dist.). Here, the trial court's imposition of consecutive sentences was discretionary; accordingly, there was no requirement for the trial court to advise Inkton of the consecutive sentence possibility.

{¶ 16} This court has acknowledged that notifying a defendant of the possibility of consecutive sentences would be "the ideal approach." *Id*. at ¶ 6. Moreover, best practice would be for the trial court to ensure that a defendant pleading to multiple crimes understands the meaning of "allied offenses" and "consecutive sentences." However, there is no such requirement in Crim.R. 11(C).

{¶ 17} Inkton concedes that there is case law "stating that neither the United States Constitution nor the Ohio Constitution requires that in order for a guilty plea to be voluntary a defendant must be told the maximum total of the sentences he faces, or that the sentence could be imposed consecutively," but argues that we should still examine whether he was prejudiced by the trial court's failure to advise him of the possibility of consecutive sentences. However, because our review of the record shows that the trial court complied with Crim.R. 11(C), we need not analyze any prejudice to Inkton. *State v. Martin*, 2024-Ohio-2633, ¶ 15 (8th Dist.), citing *State v. Dangler*, 2020-Ohio-2765, ¶ 17.

{¶ 18} The court fully complied with Crim.R. 11(C), and Inkton has not demonstrated that his pleas were not knowingly, voluntarily, and intelligently made. His sole assignment of error is overruled, and the judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
EILEEN A. GALLAGHER, J., CONCUR